EHANEY, Respondent, vs. CHESEBRO and others, Appellants.

*March 9—April 5, 1927.*

*Corporations: Salaries to officers: How changed: Requirements of articles: Effect of failure of board to fix salaries for current year.*

1. The board of directors of a corporation being unable to agree on a change of salary for the office of secretary-treasurer because the articles of incorporation required the unanimous consent of all the members of the board to effect a change, the salary provided for such office for the preceding year remained the lawful salary for the current year.  p. 536.
2. Where the articles of incorporation were amended to require at least three fourths of the outstanding stock to approve later amendments to the articles, one director obtaining two thirds of the stock did not have the power to amend the articles, under sec. 180.07, Stats., authorizing an amendment by the owners of two thirds of the stock.  p. 537.

3. The unanimous consent of the directors to change the salary of the secretary not being obtainable, a court of equity, authorized under sec. 286.32, Stats., to compel payment by the directors to the corporation of money acquired in violation of their duties, could not require the directors to pay back any portion of alleged excess salaries theretofore fixed under the articles. p. 538.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

This action was brought by a stockholder against the directors and the *Hand Knit Hosiery Company* to recover alleged excess salaries paid to officers of the corporation. The *Hand Knit Hosiery Company* was incorporated in 1905 by L. A. Bentz, Robert H. Ehaney, and *Herbert Chesebro,* with a capital stock of $7,000. Each of the incorporators held about one third of the stock in said company at all times until December, 1922. The company prospered, and in March, 1906, the capital stock was increased to $25,000; in March, 1909, to $50,000; in August, 1910, to $70,000: and in June, 1918, to $200,000.

Until 1922 the original incorporators above named constituted the board of directors. *Herbert Chesebro,* during all of said time, was president, L. A. Bentz was vice-president, and Robert H. Ehaney was secretary and treasurer of said company.

It seems that in 1922 friction arose between these three men, which resulted in Bentz selling his stock to *Chesebro.* This gave *Chesebro* 668 shares of the 1,000 shares of the common stock and placed him in control of the corporation. At a meeting of the corporation held in December, 1922, *Herbert Chesebro,* Robert H. Ehaney, and *W. E. Crocker* were chosen as directors. On January 9, 1923, at a meeting of the board of directors, *Herbert Chesebro* was elected president, *W. E. Crocker* vice-president, and *Jennie R. Chesebro* secretary-treasurer of the corporation. During

the preceding year the salaries of the officers of the corporation were as follows: president, $6,500 per year; vice-president, $6,500 per year; and secretary-treasurer, $6,500 per year. At the directors' meeting held January 9, 1923, the salaries of the officers for the ensuing year were fixed at the same amount by a two-to-one vote of the directors, Robert H. Ehaney voting in the negative. It perhaps should be mentioned here that although *Chesebro* had control of the common stock of the company, a provision for cumulative voting in the articles of incorporation enabled Ehaney to elect himself as a member of the board of directors. At this directors' meeting Robert H. Ehaney offered a resolution fixing the salaries of vice-president and secretary-treasurer at $500 per year, respectively. This resolution was lost by a vote of two to one.

During the year 1922 Robert H. Ehaney died, and *Lulu Ehaney,* the plaintiff herein and wife of the deceased Robert H. Ehaney, succeeded to his stock. She was elected a director in 1924 and in 1925. During each of these years the salaries of the officers of the company were fixed to conform to the salaries of the preceding year, and during all such times the salaries have been as above stated, namely, $6,500 for each of the principal officers. The vice-president at no time has drawn any part of the salary fixed for that official. *Mrs. Chesebro,* as secretary-treasurer, has drawn the salary of $6,500 down until the commencement of this action. The plaintiff, *Lulu Ehaney,* protested at each and every meeting of the board of directors at which salaries were fixed that the salary of the secretary-treasurer was unreasonably and excessively high.

This action was brought under the provisions of sec. 286.32, Stats., by the plaintiff as a stockholder of the company, to recover for the benefit of the corporation the alleged excessive salary thus paid to *Jennie R. Chesebro* as secretary-treasurer of the corporation. The court found

that the reasonable value of the services of *Jennie R. Chese-bro* as secretary-treasurer of the company for the year 1923 was $2,000, and for the year 1924 $3,000, and rendered judgment against the defendants *Herbert Chesebro, W. E. Crocker,* and *Jennie R. Chesebro,* requiring them jointly and severally to pay back forthwith to the corporation *Hand Knit Hosiery Company* the sum of $8,000, being the excess of salary paid to *Jennie R. Chesebro* by said company, which excess is the difference between $13,000, her salary for the two years, and $5,000, which was found to be the reasonable value of her services to the corporation during the years 1923 and 1924. From that judgment defendants appeal.

For the appellants there was a brief by *Collins & Collins* of Sheboygan, and oral argument by *W. B. Collins.*

*Charles Voigt* of Sheboygan, for the respondent.

OWEN, J. This action is brought under the provisions of sec. 286.32, Stats., which provides that the circuit court shall have jurisdiction over directors, managers, trustees, and other officers of corporations, among other things (1) to compel them to account for their official conduct in the management and disposition of the funds and property committed to their charge; and (2) to order and compel payment by them to the corporation whom they represent and to its creditors of all sums of money and of the value of all property which they may have acquired to themselves or transferred to others or may have lost or wasted by any violation of their duties as such directors, managers, trustees, or other officers.

Whether a court of equity should carry its supervisory powers to the extent of passing with refined nicety upon the salaries paid by a corporation to the officers thereof need not be considered in this case, for the following reasons: as disclosed in the statement of facts, from the time of the organization of this corporation down to the year 1922 it

was within the control of its three friends by whom it was incorporated. It seems that at a time when the most cordial relations existed they were solicitous of protecting each from possible imposition by the other two, and caused to be written into the articles of incorporation rather unusual provisions for the accomplishment of this end. The original articles of incorporation contained this provision: "No salary shall be voted to or drawn by any member of this corporation unless the same is consented to by three fourths of the then outstanding stock." These articles were executed in 1905. In January, 1906, by a resolution duly adopted at a special meeting of the stockholders of the company, this article was amended to read as follows: "Any increase, decrease, or change in the salaries of the officers of the corporation shall require the unanimous consent of the vote of all the members of the board of directors, and no stock shall be issued or sold by the corporation except with a like consent and vote." At the first directors' meeting held on January 10, 1923, after *Chesebro* acquired control of the company, the provisions of the articles of incorporation just quoted prevented any change in the salaries of the principal officers of the company except by a unanimous vote.

It appears that Ehaney was hostile to the control of the company by *Chesebro* and to the appointment of *Jennie R. Chesebro* as secretary-treasurer. He offered a resolution fixing the salary of secretary-treasurer at $500 per year. It does not appear that he made any other attempt to bring about a change of salaries at that meeting. In view of the fact that the secretary-treasurer had drawn $6,500 during the preceding year, it is not surprising that his resolution failed to receive the unanimous vote of the board of directors. Since the board of directors was unable to agree upon a change of the salary for the secretary-treasurer, by force of the article of incorporation just quoted the salary provided for that office for the preceding year remained the lawful salary for the then current year.

The circuit judge in his findings of fact refers to this provision in the articles of incorporation, and proceeds to say:

"As *Herbert Chesebro* owned and held 668 shares of the common stock in 1923, 1924, and 1925, exclusive of the fifteen shares held by his wife and *Mr. Crocker,* it follows that *Mr. Chesebro,* owning more than two thirds of all the common stock, has the power, if he chooses to exercise it, at any meeting of the stockholders to cause the adoption of an amendment of the articles which will repeal the aforesaid requirement for unanimous consent of the directors to a change in the salaries of officers. Hitherto *Mr. Chesebro* has not done so."

We see no reason why he should, and are at a loss to understand the relevancy of this observation. Certainly it cannot be contended that *Mr. Chesebro* was under any obligations to vote his stock for any amendment of the articles of incorporation, and there is something ironical in the thought that he was under obligations, after having acquired control of the company, to vote for an amendment of the articles of incorporation to which Ehaney in his lifetime consented presumably for his own protection, for it is at once a sword and a shield. But however that may be, the circuit judge was in error in assuming that *Chesebro* has it within his power to amend the articles of incorporation.

Sec. 180.07 provides that articles of incorporation may be amended "by a vote of at least the owners of two thirds of all the stock then outstanding . . . unless a greater vote shall be required in its articles." The original articles of incorporation provided that they might be amended "by a vote of at least two thirds of all the stock of said corporation then outstanding." But at the stockholders' meeting held in January, 1906, already referred to, this article was amended so as to read as follows: "These articles may be amended . . . being (by) a vote of at least three fourths of all the stock then outstanding." Apparently this amendment was adopted as a further protection to each of the three incorpo-

rators of the company and to render each of the three immune from hostile action on the part of the other two. First we find in the articles of incorporation a provision that the salary shall not be changed except by unanimous consent of the board of directors. Then we find this provision which requires a vote equal to three fourths of the outstanding stock to amend the articles of incorporation. Thereafter two of the associates could not amend the articles over the protest of the other. It is not difficult to understand the motives which prompted these various provisions. At a time when they entertained toward each other the most friendly and cordial relations, they evidently realized that the time might come when two of them might combine against the other for the purpose of prejudicing his interest in the corporation, to avoid which they voluntarily adopted these various provisions which protected one from a hostile attitude on the part of the other two. When *Chesebro* acquired control he found the salaries of the officers fixed at $6,500. To change them required the unanimous consent of the board of directors. That consent was not obtainable. Unless changed by unanimous consent the salaries for the preceding year must obtain. Whatever the power of a court of equity to readjust the salaries of officers of a corporation, there is no ground upon which the directors here may be required to pay back any portion of the salaries of these officers, which were fixed by force of the articles of incorporation, and which they had no power to change. It seems plain that the judgment in this case cannot be sustained.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss plaintiff's complaint.